MEGAN L. HAYES, Wyo. Bar # 6-2891
Attorney at Law
910 Kearney Street
Laramie, WY 82070
Telephone: 307-760-6258
mlhayes@wyoming.com

BRUCE T. MOATS, Wyo. Bar # 6-3077
Law Office of Bruce T. Moats
2515 Pioneer Avenue
Cheyenne, WY 82001
Telephone: 307-778-8844
bmoats@hackerlaw.net

Attorneys for Mandy D.W. Davis

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2017 MAR 27 PM 3:10

STEPHAN HARRIS, CLERK
CHEYENNE

IN THE UNITED STATES DISTRICT COURT, DISTRICT OF WYOMING

| | |
|---|---|
| MANDY D.W. DAVIS ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNIVERSITY OF WYOMING, ) <br> UNIVERSITY OF WYOMING FOUNDATION, ) <br> WILLIAM "BEN" BLALOCK, III, in his ) <br> individual capacity and MARY IVANOFF, ) <br> in her individual capacity, ) <br> ) <br> Defendants. ) | CASE NO. **17CV058-F** <br> <br> COMPLAINT FOR DAMAGES <br> FOR UNLAWFUL RETALIATION <br> IN EMPLOYMENT <br> <br> <br> <br> DEMAND FOR JURY TRIAL |

## INTRODUCTION, JURISDICTION AND VENUE

1. This action is brought by Mandy D.W. Davis (hereinafter "Ms. Davis" or "Plaintiff") to secure redress for defendants' violations of her civil right to be free from unlawful retaliation for filing a complaint of employment discrimination on the basis of disability and for violations of her right to due process of law.

1

2. Ms. Davis is an individual who, at all times relevant herein, was a resident of Albany County, Wyoming.

3. Plaintiff is informed and believes, and based thereon alleges, that defendant University of Wyoming is a body corporate and political subdivision of the State of Wyoming, organized pursuant to the Constitution of the State of Wyoming, Article 7, § 15, operating in Albany County, State of Wyoming.

4. Plaintiff is informed and believes, and based thereon alleges, that defendant University of Wyoming Foundation (hereinafter "UW Foundation") was and is a non-profit organization organized under the laws of the State of Wyoming. The UW Foundation is a component unit of the University of Wyoming, operating in Albany County, Wyoming.

5. Defendants University of Wyoming and UW Foundation employ more than 50 employees and are both employers within the meaning of the Rehabilitation Act of 1973, 49 U.S.C. § 701(a) (hereinafter the "Rehabilitation Act"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (hereinafter "Title VII") and the Americans with Disabilities Act of 1990/Rehabilitation Act of 1973, as amended, 29 U.S.C. 706; 791 et seq.

6. Plaintiff is informed and believes, and based thereon alleges, that defendant William "Ben" Blalock, III (hereinafter "defendant Blalock") was and is an individual residing in Albany County. At all times relevant herein, defendant Blalock, as the University of Wyoming's Vice President for Institutional Advancement and as the UW Foundation's President and Chief Executive Officer, was a supervisor, managerial employee or agent of defendant University of Wyoming and UW Foundation.

7. Plaintiff is informed and believes, and based thereon alleges, that defendant Mary Ivanoff (hereinafter "defendant Ivanoff") was and is an individual residing in Albany County. At

all times relevant herein, defendant Ivanoff was a supervisor, managerial employee or agent of defendant UW Foundation.

8. Plaintiff is informed and believes and based thereon alleges that each defendant is the agent, servant, employee, successor in interest, co-conspirator, and/or alter ego of every other defendant, and that, in doing the acts alleged herein, each defendant acted as the agent of and with the consent, knowledge, authorization and/or ratification of every other defendant herein.

9. Plaintiff is informed and believes and based thereon alleges that each defendant was in some manner intentionally and/or negligently and legally responsible for the events and happenings alleged in this Complaint and for Plaintiff's injuries and damages.

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this case arises under federal law, specifically, the Rehabilitation Act, the Americans with Disabilities Act (the ADA), the Due Process Clause of the 14th Amendment to the United States Constitution, and 42 U.S.C. § 1983.

11. Venue is proper in the District of Wyoming pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because venue under the Rehabilitation Act is governed by Title VII's venue provision and the unlawful retaliation giving rise to Plaintiff's claims occurred in this District.

12. Plaintiff Davis has exhausted her administrative remedies. Ms. Davis filed a charge of retaliation in violation of the Rehabilitation Act and the ADA with the Wyoming Fair Employment Program. Over one hundred eighty days after Plaintiff filed her charge of retaliation, the U.S. Equal Employment Opportunity Commission issued a right to sue notice authorizing this lawsuit, a true and correct copy of which is attached hereto as Exhibit 1, and incorporated herein by reference.

## FACTS CENTRAL TO PLAINTIFF'S CLAIMS

13. Ms. Davis began her employment at the University of Wyoming in August of 2006 as an Office Assistant, Senior, with the University Bookstore. She worked in a variety of positions at the University of Wyoming, including as a Human Resources Specialist in the Human Resources Department, beginning on April 16, 2008.

14. Her annual salary as a Human Resources Specialist on April 16, 2008, was $32,628.00.

15. Ms. Davis worked at the Human Resources Department until she was hired for a newly created position as the UW Foundation's in-house Human Resources Manager on December 15, 2014.

16. Ms. Davis's annual salary in 2014, prior to being hired by defendant UW Foundation, was $50,808.00.

17. In a Staff Position Request from September of 2014, the need for this new position was deemed "essential to the core mission" of the UW Foundation that 'must be filled.'

18. The stated rationale for filling this essential new position was that "[w]ith a central staff in excess of 60 people and the process of a 6-year strategic plan to reach $100M in fundraising and the addition of more staff to meet this goal *it is critical* the Foundation have an overseer of our HR functions. This position coordinates personnel programs, processes, procedures, and training the UW Foundation and assisting upper management as requested. Primary liaison to the HR department and the EPO office." (Emphasis added).

19. The addition of the new in-house Human Resources Manager position freed defendant Ivanoff and others to concentrate on the Foundation's fundraising efforts.

4

20. The Staff Position Request indicated that the funds for this new position would come from Section II funds.

21. Section II funds, as defined in the University of Wyoming Operating Budget for fiscal year 2015-2016, are those "self-sustaining budgets of the University that are supported by revenue from University auxiliary operations (e.g., housing, residence halls, dining services, student union, student health service, transportation, parking, and the University Store). Other revenue sources include gifts and contributions, student fees, and federal mineral royalties."

22. On information and belief, the UW Foundation generates its own Section II operating funds that cover the Foundation's operating expenses.

23. The University of Wyoming and the UW Foundation's Board of Trustees approved the UW Foundation's Human Resources Manager position in September of 2014.

24. Defendant Blalock interviewed Ms. Davis for the HR Manager position. During this interview, defendant Blalock stated that he hated human resource people and that their trainings were a "joke."

25. Defendant Blalock had characterized a recent training provided by the University of Wyoming that was related to disability discrimination as "idiotic," and pointedly questioned the presenter as to whether the UW Foundation would be required to hire someone who could not concentrate because they had just had an "accident in their pants."

26. Ms. Davis was hired on December 14, 2014, at a starting salary of $58,356.00 with full benefits, including health insurance and retirement benefits.

27. The University of Wyoming disbursed Ms. Davis's payroll checks to her on a monthly basis.

28. At all times during her employment at the UW Foundation, defendant Ivanoff was Ms. Davis's direct supervisor.

29. In her new position at the UW Foundation, Ms. Davis served as the administrator for all UW Foundation employee searches.

30. Ms. Davis successfully completed her six-month probationary period on June 14, 2015, and thereafter became a Staff Employee under UW Regulation 4-1I. and III. Defendant Blalock praised Ms. Davis as a positive member of the Foundation team.

31. As a Staff Employee, Ms. Davis had an expectation of continued employment that constituted a constitutionally protected property interest.

32. University of Wyoming Regulations apply to UW Foundation employees.

33. On June 15, 2015, Ms. Davis hired an individual with a physical disability as a Computer Support Specialist at the UW Foundation.

34. Defendant Blalock met the Computer Support Specialist for the first time, shortly after the Computer Support Specialist started working at the UW Foundation.

35. After meeting the Computer Support Specialist, defendant Blalock asked defendant Ivanoff about the hiring process, the extent of the candidate pool, whether the Computer Support Specialist had been the most qualified candidate in the pool for a position of that level, and whether the Computer Support Specialist had been screened appropriately.

36. Defendant Blalock found the Computer Support Specialist seemingly incapable of conversing and her hiring to be unlike any hire the UW Foundation had made previously.

37. In a meeting on June 18, 2015, defendant Ivanoff told Ms. Davis that defendant

Blalock was disappointed with the new hire, the Computer Support Specialist, after meeting her in person the preceding day.

38. Defendant Ivanoff stated that she did not want to raise the matter with the Computer Support Specialist's supervisor, Toby Marlatt, because Mr. Marlatt has a disabled relative and comments about the Computer Support Specialist's physical appearance would not 'go over well.'

39. Defendant Ivanoff explained that the Computer Support Specialist's physical appearance did not fit defendant Blalock's image for the UW Foundation and that the Computer Support Specialist's appearance was not 'part of his vision.'

40. Defendant Ivanoff told Ms. Davis not to hire another "retard."

41. Defendant Ivanoff explained to Ms. Davis that the Computer Support Specialist's appearance was not in keeping with the UW Foundation, her communication skills were not as accomplished as other UW Foundation employees, she did not "look appropriate" to defendant Blalock, and that the Computer Support Specialist was difficult to look at for defendant Blalock because the Computer Support Specialist had 'one eye going one way and one going the other way.'

42. Defendant Ivanoff told Ms. Davis that prior to hiring the Computer Support Specialist, she should have warned defendants Ivanoff and Blalock that meeting the Computer Support Specialist would be unlike what one would normally expect and that the Computer Support Specialist would not make a good first impression.

43. Defendant Ivanoff inquired with University of Wyoming's Office of Human Resources and learned that the Computer Support Specialist had never officially claimed a

7

disability. However, defendant Ivanoff later stated that, "if you meet her, you would make that assumption."

44. Defendant Ivanoff stated that they would be watching the Computer Support Specialist's performance closely. Defendant Ivanoff said she hoped that the Computer Support Specialist would be outstanding in her job duties because if not, Ivanoff implied they would terminate the Computer Support Specialist's employment.

45. After the meeting, Ms. Davis forwarded to defendant Ivanoff her email to UW Foundation staff members that had welcomed the Computer Support Specialist to the UW Foundation and described the Computer Support Specialist's outstanding qualifications. Ms. Davis asked defendant Ivanoff to forward the email to defendant Blalock who had not been on the initial email distribution list, which she did.

46. Ms. Davis filed a complaint with the University of Wyoming's Office of Diversity and Employment Practices on July 14, 2015, expressing her fear that she would lose her job for reporting the comments of defendants Ivanoff and Blalock.

47. Rick Miller, Vice President and General Counsel and acting in his capacity as an investigator of Ms. Davis's complaint, interviewed both defendants Blalock and Ivanoff on July 27, 2015.[1]

48. On information and belief, Mr. Miller informed defendants Blalock and Ivanoff that Ms. Davis had filed a complaint against them and that it would be unlawful for them to retaliate against her.

---

[1] Although the University of Wyoming concluded its investigation in August of 2015, an investigative report was not completed until nearly a year later on June 14, 2016.

49. From July to December of 2015, defendant Ivanoff behaved in an increasingly dismissive manner toward Ms. Davis.

50. In October of 2015, defendant Blalock confided to a UW Foundation Vice President that he was angry with Ms. Davis for filing a complaint against him.

51. During the conversation described in the preceding paragraph, defendant Blalock wondered what he could do and explained that he did not think he could terminate Ms. Davis's employment.

52. On October 9, 2015, in response to declining revenue from the state's general fund, University of Wyoming President McGinity implemented a hiring freeze at the University.

53. In a subsequent document entitled "Temporary Reorganization Policy to Address Urgent Operational Objectives," University of Wyoming's Director of Human Resources explained that any proposed reorganization plan that "results in the retrenchment of personnel and/or elimination of functions or services that are *no longer critical* to the successful operation of the department must demonstrate how eliminating functions will not impede the effective operation of the department. *The plan must also demonstrate that retrenchment is not for the purpose of eliminating employees without some level of due process.*" (Emphasis added).

54. On October 21, 2015, defendant Ivanoff, Ms. Davis and two other UW Foundation employees met to discuss terminating an accountant's employment at the UW Foundation, effective November 13, 2015, prior to the expiration of her probationary period, for unsatisfactory performance of her job duties.

55. Defendant Blalock submitted a reorganization plan to University of Wyoming Human Resources for approval on November 13, 2015. That reorganization plan was approved

9

on November 16, 2015.

56. The reorganization plan proposed eliminating numerous positions at the UW Foundation, including the accountant's and Ms. Davis's positions.

57. Only three employees, including the accountant and Ms. Davis, were to lose their positions under the reorganization plan.

58. Other positions proposed for elimination either had not been filled for some time or the UW Foundation did not have plans to fill them.

59. The UW Foundation claimed that Ms. Davis's position should be eliminated because "the functions performed are *not critical* to our primary responsibilities." (Emphasis added).

60. On December 1, 2015, defendant Blalock met with the accountant, Julia Stetler and Ms. Davis, to explain that their jobs were being "retrenched," i.e., eliminated through the reorganization process. They were placed on immediate administrative leave until January 31, 2016.

61. Julia Stetler was not a UW Foundation employee. As of December 1, 2015, Ms. Stetler was employed by the American Heritage Center in an at-will position as an Assistant Archivist.

62. On information and belief, Ms. Stetler had a contract with the UW Foundation as the content curator for the University of Wyoming history exhibit at the Rochelle Gateway Center, which is where the UW Foundation's offices are located.

63. On information and belief, Ms. Stetler's contract with the UW Foundation was

scheduled to expire on or before January 31, 2016, the date given for her "retrenchment."

64. On information and belief, the decision to terminate the accountant's employment had been postponed to make it appear as though her position was being eliminated or "retrenched" through the reorganization plan.

65. In fiscal year 2016, defendant UW Foundation raised more money than it had ever raised in a single year of fundraising in its more than 50-year history: over $63 million.

66. $63 million raised in a single year represented a significant step toward the UW Foundation's 6-year strategic plan to reach $100M in fundraising that it had claimed justified the critical need for Ms. Davis's in-house Human Resources Manager position just one year before the UW Foundation eliminated her position.

67. The UW Foundation receives a one-percent management fee on the donations it collects that funds its operations.

68. As of June 30, 2016, the UW Foundation had $1,305,629.00 in cash and total assets of $612,253,729.00, according to an independent auditor's report.

69. Ms. Davis's position as HR Manager at the Foundation had been paid for entirely by UW Foundation's Section II funds.

70. The "retrenchment" and elimination of Ms. Davis's position as HR Manager was a subterfuge for unlawful retaliation.

71. On March 28, 2016, the University of Wyoming rehired Ms. Davis from retrenchment at an annual salary of $38,172.00.

72. Plaintiff repeats and realleges the allegations of paragraphs 1 through 71,

11

inclusive, and incorporates the same by reference as though set forth fully herein for all causes of action set forth below.

### COUNT 1. Cause of Action: Retaliation in Employment for Filing a Complaint of Employment Discrimination on the Basis of Disability, in Violation of Section 504 of the Rehabilitation Act of 1973 and the ADA, against the University of Wyoming and the University of Wyoming Foundation.

73. Defendants University of Wyoming and the UW Foundation, through its agents or supervisors, engaged in unlawful retaliation by terminating Ms. Davis's employment after she had asserted her right to engage in protected activity to oppose discriminatory practices, in violation of Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act.

74. Defendants University of Wyoming and the UW Foundation at all times relevant hereto had actual and constructive knowledge of the conduct described in paragraph 73 above.

75. As a direct and proximate result of defendants' actions, Ms. Davis has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress; and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Ms. Davis is thereby entitled to general and compensatory damages in amounts to be proven at trial.

76. As a further direct and proximate result of defendants' violation of Section 504 of the Rehabilitation Act of 1973 and the ADA, Ms. Davis has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with defendants and has thereby incurred, and will continue to incur, legal fees and costs. Plaintiff requests that attorney's fees be awarded pursuant to Section 505 of the Rehabilitation Act of 1973 and 42 U.S.C. 12205 (ADA).

**COUNT 2. Cause of Action: Violation of Plaintiff's Federal Right to Procedural Due Process for Failing to Provide Written Notice and Written Reasons for Terminating Her Position through a "Retrenchment" and Failing to Provide Plaintiff with a Pre- or Post- Termination Hearing, against Individual Defendants Blalock and Ivanoff.**

77. As a public employee who had successfully completed her probationary period, Ms. Davis had an expectation of continued employment that constituted a constitutionally protected property interest.

78. As a public employee with a constitutionally protected property interest in her continued employment, Ms. Davis was entitled to due process protections under federal law prior to and after her position as HR Manager was eliminated through "retrenchment."

79. Eliminating Ms. Davis's position through a "retrenchment" or reduction in force does not affect her entitlement to a pre-termination hearing because the "retrenchment" was a sham aimed specifically at her.

80. Eliminating Ms. Davis's position through a "retrenchment" was stigmatizing and pre- or post- termination hearings would have provided her an important opportunity to argue her claim that the "retrenchment" was a subterfuge for unlawful retaliation.

81. The failure of defendants Blalock and Ivanoff, who at all times relevant hereto were acting under color of state law, to provide Ms. Davis with due process of law guaranteed by the 14th Amendment to the United States Constitution violated her rights under 42 U.S.C. § 1983.

82. As a direct and proximate result of the actions of defendants' Blalock and Ivanoff, Ms. Davis has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress; and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Ms. Davis is thereby entitled to

general and compensatory damages in amounts to be proven at trial.

83. As a further direct and proximate result of defendants' violation of her rights to due process, Ms. Davis has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with defendants and has thereby incurred, and will continue to incur, legal fees and costs. Plaintiff requests that attorney's fees be awarded pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Mandy D.W. Davis, prays for judgment against defendant University of Wyoming, defendant UW Foundation and named individual defendants Blalock and Ivanoff as follows:

a. For compensatory damages according to proof;

b. For back pay and reinstatement or front pay;

c. For injunctive relief;

d. For attorney and expert witness fees as allowed by statute;

e. For pre-judgment interest at the maximum legal rate;

f. For interest on the judgment at the maximum legal rate;

g. For costs of the suit herein; and

h. For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff requests a jury trial on all issues and claims raised in this Complaint.

Respectfully submitted this 27th day of March, 2017.

MANDY D.W. DAVIS, Plaintiff

By: _____
Bruce T. Moats
Law Office of Bruce T. Moats
2515 Pioneer Avenue
Cheyenne, WY 82001
(307)778-8844
bmoats@hackerlaw.net

Megan L. Hayes
Attorney at Law
910 Kearney Street
Laramie, WY 82070
(307) 760-6258
mlhayes@wyoming.com

Attorneys for Mandy D.W. Davis

EEOC Form 161 (11/16)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Mandy Davis
c/o Megan L. Hayes
910 Kearney Street
Laramie, WY 82070

From: Phoenix District Office
3300 North Central Ave
Suite 690
Phoenix, AZ 85012

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 32K-2016-00031 | Cherrie Y. Martin, State & Local Program Manager | (602) 640-5064 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

- NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_[signature]_

Elizabeth Cadle,
District Director

January 10, 2017
(Date Mailed)

Enclosures(s)

cc: THE UNIVERSITY OF WYOMING FOUNDATION
c/o Terra Evans, Esq.
1000 E. University Ave.
Laramie, WY 82071

Davis v. University of Wyoming, et al.

Complaint, Exhibit

INFORMATION RELATED TO FILING SUIT
UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

PRIVATE SUIT RIGHTS -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10** – not 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Davis v. University of Wyoming, et al.

Complaint, Exhibit

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

<u>If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.</u>

"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):

- The limitations from the impairment no longer have to be severe or significant for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), "major life activities" now include the operation of major bodily functions, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- Only one major life activity need be substantially limited.
- With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it would be substantially limiting when active.
- An impairment **may be substantially limiting even though it lasts or is expected to last fewer than six months.**

"Regarded as" coverage:

- An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively BOTH transitory (lasting or expected to last six months or less) AND minor.
- A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.